UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HECTOR LAPORTE,

                Plaintiff,

   -v-

WILLIAM KEYSER;
CORRECTIONAL OFFICER M.
GOFFE; SGT. W. RAMOS; and LT. E.
MYDOSH,

                Defendants.

No. 14-CV-8293 (KMK)

OPINION & ORDER

Appearances:

Hector Laporte
Dannemora, NY
*Pro Se Plaintiff*

Jennifer Gashi, Esq.
Julinda A. Dawkins, Esq.
New York State Office of the Attorney General
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

      Plaintiff Hector Laporte ("Plaintiff"), currently incarcerated at Clinton Correctional Facility, brings this pro se Action, pursuant to 42 U.S.C. § 1983, against Superintendent William Keyser ("Keyser"), Correctional Officer M. Goffe ("Goffe"), Sgt. W. Ramos ("Ramos"), Lt. E. Mydosh ("Mydosh,"), John Doe #5, and John Doe #6 (collectively, "Defendants"), alleging that, during Plaintiff's incarceration at Sing Sing Correctional Facility ("Sing Sing"), Defendants used excessive force against him on two occasions and denied him medical care. (*See* Am. Compl. (Dkt. No. 64).) Before the Court is Defendants' Partial Motion To Dismiss the Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"). (Dkt. No. 77.) Defendants claim that Plaintiff fails to state an Eighth Amendment claim of medical indifference,

or, in the alternative, that Defendants are entitled to qualified immunity as to this claim. Defendants also argue that Plaintiff fails to allege personal involvement as to Keyser, or, in the alternative, that Keyser is entitled to qualified immunity. (*See* Defs.' Mem. of Law in Supp. of Mot. To. Dismiss ("Defs.' Mem.") 4–8 (Dkt. No. 78.).) For the reasons that follow, the Motion is granted.

I. Background

A. Factual Background

The following facts are taken from the Amended Complaint and are accepted as true for the purposes of this Motion. At the time of the events described herein, Plaintiff was an inmate at Sing Sing Correctional Facility. (*See* Am. Compl. 5).[1] Plaintiff alleges two instances of excessive force being used against him and a claim of medical indifference.

1. Use of Force Incidents

On February 2, 2013, Plaintiff was in his cell having a conversation with one of the social workers when "suddenly" Keyser and two John Doe officers arrived at Plaintiff's cell "with pack=up [sic] bags" in hand. (*See id.* at 8.)[2] "Keyser explained to [P]laintiff that he was being removed from the I.C.P. [intermediate care] program and put back into general population." (*See id.*) "Mr. Douglas Gar, [the] social worker[,] inquired as to who ordered for [P]laintiff's removal from the program, when suddenly he was rebuffed by Mr. Keyser . . . who started yelling at Mr.

---

[1] The Amended Complaint consists of some information on a form as well as handwritten pages inserted into the form, with different numbering schemes on each sheet of paper. Consistent with Defendants' Memorandum of Law, (*see* Defs.' Mem. 3 n.2), the Court refers to pages in sequential order in accordance with the ECF-generated page numbers that appear on the top of each page.

[2] Numerous words and phrases in Plaintiff's Amended Complaint are underlined or placed in parenthesis or quotation marks. Here and elsewhere, when quoting such phrases, this Opinion removes the emphasis for ease of readability.

2

Gar by stating 'shut the fuck up' and stop interfering with security matters." (*See id.* at 8–9.) "As a result, Mr. Gar was dejected from a very serious matter, because Plaintiff was a patient in need of assistance." (*See id.* at 9.) Plaintiff filed a grievance on March 1, 2013 concerning his removal from the I.C.P. program. (*See id.*)

"On March 6, 2013, while [P]laintiff was returning from afternoon lunch[,] [P]laintiff observed Mr. Keyser and C.O. Mr. Goffe having a conversation." (*See id.* at 9–10.) "[W]hen Mr. Keyser saw [P]laintiff he started to stare and motion toward [Plaintiff's] direction, 'showing' C.O. Mr. Goffe." (*See id.* at 10.) At approximately 1 p.m., "[P]laintiff was given a pass for the law library[,] and while on his way, C.O. Mr. Goffe ordered [P]laintiff to place his hands on the wall for a pat[-]frisk." (*See id.*) "[W]hile on the wall, C.O. Mr. Goffe was going through the paperwork when he came across a copy of the [§ ]1983 civil claim against Mr. Keyser." (*See id.*) As a result, "Goffe became very hostile [and] abusive and threw [P]lantiff['s] legal paper's [sic] on the floor and stated go back to your cell." (*See id.* at 10–11.) Then, "[P]laintiff bent down to retrieve his paper's [sic], when suddenly C.O. Mr. Goffe started to physically assault [P]laintiff by punching him in the face and body repeatedly, as [P]laintiff 'cringed' in agony from each 'blow.'" (*See id.* at 11.) "Plaintiff was beaten until he collapsed and curled-up in a fetal position." (*See id.*) "However, the beating continued i.e. [P]laintiff was kicked multiple times and also hit with the [b]aton until he was unconscious." (*See id.*) Plaintiff regained consciousness when Ramos slapped him in the face and demanded that Plaintiff stand up. (*See id.* at 12.)

Plaintiff was taken to the facility hospital by Goffe and Ramos for "emergency purposes because [P]laintiff was in very bad condition." (*See id.*) Upon arrival, they were met by Mydosh and another John Doe, who was there to take pictures of Plaintiff's injuries. (*See id.*) While

3

Plaintiff was waiting to be examined, "Mydosh ordered the medical staff out of the room" and told Ramos and Goffe "fix him up[,] meaning [P]laintiff[,] and then they started beating [P]laintiff up again with fist[s], batons, [and] feet, until [P]laintiff begged, pleaded for them to stop hit[t]ing him." (*See id.*)  The x-ray technician told Defendants to stop, and "Defendants then backed off, and allow[ed] for the x-ray technician to proform [sic] his duty." (*See id.* at 14.)

Plaintiff alleges he suffered "bruises, facial swelling, lower back injuries, sciatica, etc[.] unconsciousness for a long period of time." (*See id.* at 21.)  Plaintiff was in the Sing Sing infirmary for 17 days, under medical observation, because of his injuries. (*See id.* at 20– 21.)

### 2. Medical Indifference

Following the use of force incidents, Plaintiff was taken to Westchester County Medical Center ("W.C.M.C.") by John Doe #5 and John Doe #6 for further diagnosis. (*See id*. at 14–15.) Plaintiff alleges the John Doe Defendants "violated [P]laintiff['s] constitutional Eight[h] Amendment Rights, under Deliberate Indifference" and brings a claim for medical indifference. (*See id.* at 15, 17, 20.)  Plaintiff brings claims against John Doe #5 in his official capacity, specifically that he "violated [the] officer's manual, case law, [and] medical protocol" when he interfered with Plaintiff's medical treatment and care "while he was still being evaluated and under intravenous lines." (*See id.* at 15.)  Plaintiff alleges that "John Doe #5 put [P]laintiff['s] life in serious danger, when he ignored medical staff at W.C.M.C." and "started to remove the intravenous line from [P]laintiff['s] arm" and "ignor[ed] staff protestation [sic] that their evaluation had not been completed." (*See id.* at 15–16.)  Plaintiff brings similar claims against John Doe #6 in his official capacity, alleging he also violated the officer's manual, case law, and medical protocol "when he participate[d] and allow[ed] him-self [sic] to be cohesive [sic] by an employee to commit an illegal[ ]act upon [P]laintiff['s] medical treatment [and] care while still

4

being evaluated by medical staff." (*See id.* at 17.)  John Doe #6, acting together with John Doe #5, "removed the intravenous lines[] from [P]laintiff['s] arm," putting "[P]laintiff['s] life in serious danger" by "not listening to medical staff at W.C.M.C." (*See id.* at 17–18.)  This "overr[o]de the wishes of medical staff at W.C.M.C. who were still attempting to evaluate [P]laintiff['s] condition" and "disrupt[ed] their ability to provide the medical assistance . . . for which he had been transported there to receive[]." (*See id.* at 19.)  Plaintiff was transported back to Sing Sing . . . without completion of the medical evaluation.  (*See id.*)  Plaintiff alleges their behavior "was not just reckless . . . but clearly a constitutional violation towards [P]laintiff['s] rights." (*See id.* at 18.)  Plaintiff concludes that actions of the John Doe Defendants, "in intervening with Plaintiff treatment [and] care, is sufficient to support [a] medical indifference claim." (*See id.* at 20.)

Plaintiff seeks compensatory damages of $1,000,000 from each Defendant for his injuries.  (*See id.* at 6.)

B.  Procedural Background

Plaintiff filed his initial Complaint in this Action on October 14, 2014.  (*See* Compl. (Dkt. No. 1).)  Plaintiff later filed with the Court a document entitled "Amended Complaint & Petition for Assignment of Counsel," dated April 16, 2015, and filed with the Court on April 28, 2015.  (Dkt. Nos. 15, 16.)[3]  On October 23, 2015, Defendants filed a Motion To Dismiss along with an accompanying Memorandum of Law.  (Dkt. Nos. 30, 31.)  Plaintiff failed to file an opposition to Defendants' motion and per the Defendants' request, (Dkt. No. 35), the Court

---

[3] On May 8, 2015, the Court denied Plaintiff's request for appointment of counsel without prejudice.  (*See* Dkt. No. 17.)

5

deemed the motion fully submitted, (Dkt. No. 36).[4]  In an Order dated June 22, 2016, the Court found that although labeled in part as an "Amended Complaint," Plaintiff's amended submission appeared to only address Plaintiff's "Petition for Assignment of Counsel" and did not relate to the allegations in his initial Complaint.  (Dkt. No. 41.)  The Court found that Plaintiff's initial Complaint, filed on October 14, 2014, (Dkt. No. 1), was the operative Complaint, and thus denied without prejudice Defendants' pending motion to dismiss challenging the mislabeled "Amended Complaint."  (Dkt. No. 41.)

Per the Court's Order, on July 6, 2016, Defendants filed a proposed briefing schedule for the First Motion To Dismiss ("First Motion"), (Dkt. No. 42), which the Court adopted on July 12, 2016, (Dkt. No. 44).  On August 16, 2016, Defendants filed the First Motion and accompanying Memorandum of Law.  (Dkt. Nos. 46, 47.)  Plaintiff failed to file an opposition in accordance with the adopted briefing schedule and at the request of Defendants, (Dkt. No. 50), the Court deemed the First Motion to be fully submitted, (Dkt. No. 51).  However, following multiple requests, (Dkt. Nos. 52, 53, 55), the Court granted Plaintiff an extension of time to file an opposition to the First Motion, (Dkt. No. 56).[5]  On November 30, 2016, Plaintiff filed his

---

[4] On November 10, 2015, Plaintiff filed a document titled "Motion in Support of Motion To Amend and in Opposition of Motion To Dismiss, Motion To Appoint Counsel."  (Dkt. No. 39.)  However, the document was erroneously filed in the Second Circuit and therefore, was not docketed in this case until March 17, 2016.  (Dkt. (entry for Nov. 10, 2015).)

[5] Plaintiff's first two requests for extensions, dated October 30 and November 1, 2016, asserted that Plaintiff was unable to access the law library due to the fact that Clinton Correctional Facility was on lockdown status.  (Dkt. Nos. 52, 53.)  Plaintiff's third request for an extension, dated November 7, 2016, was written by a law library clerk at Clinton and stated that the clerk's "assistance was sought in drafting this letter on behalf of [P]laintiff."  (Dkt. No. 55.)  The letter stated that Plaintiff "had another clerk assisting him in drafting his . . . opposition," but "d[ue] to the tumultuous environment at Clinton Correctional Facility between warring gang factions[,] a series of lockdowns were ordered and [access to] the law library was suspended."  (*Id.*)  The letter further asserted that "during th[e] lockdown[,] the clerk assigned to assist [P]laintiff was transferred, so . . . he could not complete drafting [P]laintiff's . . . opposition."

Opposition, (Dkt. No. 57), and on December 12, 2016, Defendants filed their reply, (Dkt. No. 58). On February 16, 2017, the Court denied the First Motion to Dismiss without prejudice, and ordered Plaintiff to file an Amended Complaint within 30 days supplying sufficient information to identify the John Doe Defendants. (Dkt. No. 60). On March 9, 2017, the Court granted Plaintiff an extension of time to file the Amended Complaint. (Dkt. No. 62.)

On March 17, 2017, Plaintiff filed an Amended Complaint. (Am. Compl.) The Court granted Defendants' request for an extension of time to move or answer the Amended Complaint. (Dkt. No. 66.) On April 26, 2017, Defendants inquired whether the Court will be issuing an order instructing the New York State Office of the Attorney General to ascertain the name of the John Doe Defendants named in the Amended Complaint pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997). (Dkt. No. 67) The Court informed Defendants that Plaintiff did not provide sufficient information to permit the Attorney General's Office to identify the John Doe Defendants. (Dkt. No. 68.) Thus, the Attorney General was not under an obligation to identify the John Doe Defendants pursuant to *Valentin*, 121 F.3d 72. (*Id.*)

On May 17, 2017, Defendants requested a premotion conference to submit a second, partial Motion To Dismiss. (Dkt. No. 75.) On May 31, 2017, the Court set a briefing schedule for the Motion. (Dkt. No. 76.) Accordingly, Defendants filed the instant Motion on June 28, 2017 and an accompanying memorandum of law. (Dkt. Nos. 77, 78.) Plaintiff failed to oppose Defendants' Motion, and per the Defendants' request, (Dkt. No. 80), the Court deems the Motion fully submitted.[6]

---

(*Id.*)

[6] On February 5, 2018, Plaintiff sought an extension of time to respond to the Motion, (*see* Dkt. Nos. 85, 86), which the Court denied as untimely, (*see* Dkt. No. 87).

II.  Discussion

  A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his [or her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the

doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and internal quotation marks omitted)).

B. Analysis

Defendants move to dismiss the medical indifference claims against all the Defendants and all the claims against Keyser. The Court will address each claim in turn.

### 1. Medical Indifference Claims

Defendants argue that Plaintiff fails to state a medical indifference claim under the Eighth Amendment. (Defs.' Mem. 4–5.) "The Eighth Amendment forbids deliberate indifference to serious medical needs of prisoners." *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (internal quotation marks omitted). "The standard of deliberate indifference includes both subjective and objective components." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). To establish such a claim, Plaintiff must plausibly allege both (1) "that he suffered a sufficiently serious constitutional deprivation" and (2) that the Defendants "acted with deliberate indifference." *Feliciano v. Anderson*, No. 15-CV-4106, 2017 WL 1189747, at *8 (S.D.N.Y. Mar. 30, 2017). The Amended Complaint does not satisfy these requirements.

The Amended Complaint does not allege that Plaintiff received inadequate medical care as a result of any of the named Defendants' purported actions, and therefore does not satisfy the objective prong of the Eighth Amendment analysis. *See Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) ("The first inquiry is whether the prisoner was actually deprived of adequate medical care."). The allegations in the Complaint regarding interference with the intravenous line describe actions by the John Doe Defendants, not any of the named Defendants. Nor does Plaintiff allege that the named Defendants engaged in any conduct regarding his medical care that caused him physical harm, or was likely to do so. *See id.* at 280 (asking "what harm, if any, the inadequacy [in treatment] has caused or will likely cause the prisoner").

Further, Plaintiff's Amended Complaint contains no factual allegations that any of the named Defendants "knew of and disregarded . . . [P]laintiff's serious medical needs."[7] *Chance*,

---

[7] Plaintiff alleges that Keyser's interruption of Plaintiff's February 2, 2013 conversation with the social worker caused the social worker to be "dejected from a very serious matter, because Plaintiff was a patient in need of assistance." (*See* Am. Compl. at 8–9.) This claim fails

143 F.3d at 703. To satisfy this standard "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Phelps v. Kapnolas*, 308 F.3d 180, 185–86 (2d Cir. 2002) (internal quotation marks omitted). Thus, Plaintiff has failed to allege that any Defendant "act[ed] with a sufficiently culpable state of mind." *Salahuddin*, 467 F.3d at 280. Thus, the Amended Complaint fails to state a claim for deliberate indifference to medical needs against any of the named Defendants.

Plaintiff does make some specific factual allegations regarding the conduct of John Doe Defendants #5 and #6. (*See* Am. Compl. 15–19.) However, Plaintiff does not provide any identifying information about the John Doe Defendants that he seeks to sue. While Plaintiff is entitled to the Court's assistance in determining the identity of any John Doe Defendants, *see Valentin*, 121 F.3d at 76, it is still Plaintiff's responsibility to provide sufficient identifying information to permit the New York State Department of Correctional Services ("DOCCS") to identify the John Doe Defendants, s*ee id.* at 75 (explaining that the plaintiff provided the defendant with the officer's surname, the unit to which he was assigned, the date and location of the incident in question, and the docket number of the case). Plaintiff was instructed to amend the Complaint to supply such information, but Plaintiff has failed to do so. (Dkt. Nos. 60, 68.)

---

to meet the objective element of the test for medical indifference, because it is unclear if Plaintiff was actually deprived of adequate medical care—indeed, Plaintiff does explain what medical care the social worker was even providing the Plaintiff—and there is no allegation in the Amended Complaint that Plaintiff was harmed as a result of Keyser's interruption. *See Salahuddin*, 467 F.3d at 279 (explaining that the first prong of the test for medical indifference is "whether the prisoner was actually deprived of adequate medical care."). Additionally, the subjective element of the test is not satisfied because there is no allegation in the Amended Complaint that Keyser "knew of and disregarded . . . [P]lainitff's serious medical needs." *Chance*, 143 F.3d at 703.

Plaintiff alleges the John Doe Defendants pulled the intravenous line out of his arm. (*See* Am. Compl. 19.) However, Plaintiff has failed to demonstrate how that action "pose[d] an unreasonable risk of serious damage to [Plaintiff's] health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013). Therefore, the John Doe Defendants are dismissed as parties from this Action.[8]

### 2. Claims Against Defendant Keyser

Keyser argues that the Amended Complaint should be dismissed against him because he was not personally involved in the alleged constitutional violations. (Defs.' Mem. 5–6.) "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (italics and internal quotation marks omitted). In other words, "because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*,

---

[8] The Court notes that because Plaintiff allowed the statute of limitations to run on his claims against the John Doe Defendants without identifying them by name, he will be unable to substitute a named party for a John Doe Defendant unless he (1) "exercise[d] due diligence, prior to the running of the statute of limitations, to identify the defendant[s] by name," and (2) "describe[s] the John Doe party in such form as will fairly apprise the party that [he or she] is the intended defendant." *Hogan v. Fisher,* 738 F.3d 509, 519 (2d Cir. 2013) (internal quotation marks omitted).

556 U.S. at 676. Therefore, Plaintiff must plausibly allege conduct by Keyser that falls into one of the five categories identified above. *See Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL 365493, at *4 (S.D.N.Y. Jan. 24, 2017) (holding that the five categories "still control[] with respect to claims that do not require a showing of discriminatory intent" post-*Iqbal*).

Plaintiff has failed to plausibly allege Keyser's personal involvement in the alleged constitutional deprivations. The gravamen of the Amended Complaint is that Defendants Goffe, Ramos, and Mydosh assaulted him on two occasions on March 6, 2013. (*See* Am. Compl. 10–13.) The Amended Complaint contains no allegations whatsoever that Keyser was involved in, aware of, or somehow permitted the use of force in the incidents that allegedly took place on March 6, 2013. The Amended Complaint does not even allege that Keyser was present during these two incidents. Keyser's name appears in the Amended Complaint in the context of only two interactions with Plaintiff. The first is in an alleged verbal exchange between Keyser and Gar, the social worker, on February 2, 2013, where no constitutional violation against Plaintiff is alleged to have occurred. (*See id.* at 8–9.) The second was when Plaintiff allegedly observed Keyser and Goffe having a conversation the morning before the alleged use of force, when Plaintiff saw Keyser "stare and motion toward [Plaintiff's] direction, 'showing' C.O. Mr. Goffe." (*See id.* at 9–10.) This second interaction does not plausibly allege that Keyser ordered Defendants Goffe, Ramos, and Mydosh to use excessive force against Plaintiff. *See Sash v. United States*, 674 F. Supp. 2d. 531, 544 (S.D.N.Y. 2009) (finding no personal involvement when the plaintiff did not "contend that [the defendant] ordered [the other defendants] to use excessive physical force"). And, to construe from this allegation that Keyser had any personal involvement in the use of force would be pure speculation. *See Twombly*, 550 U.S. at 555 (holding that "[f]actual allegations must be enough to raise a right to relief above the speculative

level.").

Moreover, Keyser cannot be held personally liable for constitutional violations by other Defendants merely "because he was in a high position of authority in the prison system." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016), *as amended* (Feb. 24, 2016) (same). Personal involvement requires "a showing of more than the linkage in the prison chain of command." *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985). Additionally, the Amended Complaint lacks any allegation that Keyser failed to intervene in Goffe, Ramos, and Mydosh's use of force by failing to remedy a known wrong or "exhibit[ing] deliberate indifference" to Plaintiff's rights "by failing to act on information indicating that unconstitutional acts were occurring." *Grullon*, 720 F.3d at 139 (external quotation marks omitted). Nor does Plaintiff allege that Keyser was aware that Goffe, Ramos, and Mydosh had a history of using excessive force, such that the Court could reasonably infer that Keyser knew excessive force may be used against Plaintiff. *See id.* at 139 (listing as categories of personal involvement when a defendant allows "a policy or custom" of unconstitutional practices to continue or when he "was grossly negligent in supervising subordinates who committed the wrongful acts"); *see also Sash*, 674 F. Supp. 2d. at 545 (finding no personal involvement where defendant was not "aware [other defendants] were going to use excessive force" and had no "realistic opportunity to intervene to prevent the harm from occurring" (internal quotation marks omitted)). The Court therefore dismisses Plaintiff's claims against Keyser.[9]

---

[9] Because the Court dismisses the Amended Complaint for failure to allege Keyser's personal involvement, the Court need not reach Keyser's alternative arguments regarding qualified immunity. (Defs.' Mem. 6–8.)

III. Conclusion

For the foregoing reasons, Defendants' Partial Motion To Dismiss is granted as to the medical indifference claims against all Defendants and all the claims against Keyser. Because Plaintiff has already been given an opportunity to amend his Complaint, (*see* Dkt. No. 60), the medical indifference claims and all the claims against Keyser are dismissed with prejudice. *See Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (holding that the plaintiff was not entitled to "a third go-around"); *Melvin v. Cty. of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *24 n.19 (S.D.N.Y. Mar. 29, 2016) (granting motion to dismiss with prejudice where "[the] [p]laintiff has already had two bites at the apple, and they have proven fruitless" (alterations and internal quotation marks omitted)).

The Clerk of the Court is directed to mail a copy of this Order to Plaintiff and terminate the pending motion. (Dkt. No. 77.)

The Court will hold a status conference on February 14, 2018 at 10:00 a.m. The Parties should be prepared to discuss a case management plan at the conference.

SO ORDERED.

Dated: February 8, 2018
      White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

15